UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANK GARCIA,

                                    Plaintiff,

            v.                                              9:18-CV-0854
                                                            (MAD/TWD)

CHERYL V. MORRIS, et al.,

                                    Defendants.

_____

APPEARANCES:

FRANK GARCIA
09-B-2727
Plaintiff, pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        Pro se plaintiff Frank Garcia ("Plaintiff") commenced this action by filing a civil rights

Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") and requested leave to proceed in

forma pauperis.  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").  By Decision and Order

of this Court filed August 24, 2018 (the "August Order"), the Court granted Plaintiff's IFP

application and reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. §

1915(e) and 28 U.S.C. § 1915A.  *See* Dkt. No. 4.  Based upon that review, the Court

dismissed the Complaint for failure to state a claim upon which relief could be granted.  *See*

Dkt. No. 4, *generally*.  In light of his pro se status, Plaintiff was afforded an opportunity to submit an Amended Complaint.  Dkt. No. 4 at 8.

Presently before the Court is Plaintiff's Amended Complaint.  Dkt. No. 9 ("Am. Compl.").

## II. LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the August Order and will not be restated here.  *See* Dkt. No. 4 at 2-4.  Taking into account Plaintiff's pro se status, the Court construes the allegations in the Amended Complaint with the utmost leniency.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## III. SUMMARY OF AMENDED COMPLAINT[1]

The facts are set forth as alleged by Plaintiff in his Amended Complaint.

In 2009, Plaintiff was convicted of four counts of murder in the first degree, two counts of kidnaping, and one count of attempted murder in the first degree.  Dkt. No. 9-2 at 24.[2] Plaintiff has been in DOCCS' custody since 2009.  *Id*.

In April 2011, Plaintiff applied to participate in the Family Reunion Program ("FRP") at Attica Correctional Facility ("Attica C.F.").  Dkt. No. 9-2 at 27.  The FRP is designed to provide

---

[1]        The Amended Complaint includes exhibits. Dkt. Nos. 9-1 and 9-2. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]        *See* http://nysdoccslookup.doccs.ny.gov (last visited Dec. 11, 2018).

2

selected inmates and their families the opportunity to meet for an extended period of time in privacy.[3]  *See generally*, Compl.; N.Y. Comp. Codes R. & Regs. tit. 7, § 220.1.  During the relevant time period, defendants Cheryl Morris ("Morris") and Alicia Smith-Roberts ("Smith-Roberts") served as DOCCS' Director of Ministerial, Family, and Volunteer Services ("MFVS") and determined which prisoners were eligible for the program.  Am. Compl. at 4.  Morris and Smith-Roberts were vested with the authority to apply "discretionary subjective judgments" when denying, granting, or revoking an inmate's participation in the FRP.  *Id*. at 11.

Plaintiff's April 2011 application was denied.  Dkt. No. 9-2 at 27.  Plaintiff was advised that participation in the FRP was a "privilege" and due to the "serious and violent nature" of his crime, Plaintiff must successfully complete Aggression Therapy Training ("ART") before he could apply.  *Id*.  With respect to ART, Plaintiff was advised that he was "on the list" but due to his life sentence, "there is no urgency to have you complete the program soon. We have 1.087 men on the list and you would be close to the bottom of that list."  *Id*.

In August 2011, Plaintiff re-submitted his FRP application.  Dkt. No. 9-2 at 30. In October 2011, Plaintiff's application was denied due to Plaintiff's refusal to attend aggression and substance abut programs.  *Id*.; Dkt. No. 9-2 at 29-30.

In November 2011, Plaintiff re-submitted his FRP application.  Am. Compl. at 7. Morris granted Plaintiff's November 2011 application.  *Id*.  at 8.  Plaintiff participated in the FRP at Attica C.F. with his wife and their three children.  *Id.* at 7.  Plaintiff and his family were permitted to participate in the program, uninterrupted, for eight weeks.  *Id*.

---

[3]     "Generally, FRP visits take place overnight or over a weekend in a trailer within the prison facility."  *Hernandez v. Coughlin*, 18 F.3d 133, 135 (2d Cir. 1994).

In November 2012, Plaintiff filed an application (No. 12-675) seeking permission to add his sister and father as program participants. Am. Compl. at 7; Dkt. No. 9-2 at 21. The application was approved at the facility level and forwarded to the Deputy Commissioner for Program Services for special approval of the "add ons only" pursuant to NYCRR §220.6(c).[4] Am. Compl. at 8, 25, 26; Dkt. No. 9-2 at 21.

On March 15, 2013, the application was denied by the Deputy Commissioner of Program Services because Plaintiff failed to participate in an alternative anti-violence program. Am. Compl. at 8; Dkt. No. 9-2 at 22. Plaintiff was advised that the Innovative Therapeutic Program ("ITP") "is not a sanctioned anti-aggression program." *Id*. Plaintiff was directed to provide proof of ART or "AVP1 and AVP2" completion. Am. Compl. at 26.

Plaintiff appealed to Morris and participated in the anti-violence programming. Am. Compl. at 8, 26. In the appeal, Plaintiff inquired as to when the ITP became "de-sanctioned" as an alternate to anti-aggression therapy. *Id*. Plaintiff advised that, since 2011, he had been on the wait list for Aggression Therapy Training ("ART") and Alcohol and Substance Abuse Treatment ("ASAT"). *Id*. at 9. While the appeal was pending, Plaintiff's wife and children continued to visit. *Id*. at 8-9.

On November 25, 2013, Morris revoked Plaintiff's FRP status and noted that Plaintiff

---

[4]     Once an inmate has successfully participated in the program, subsequent applications may be processed and approved at the facility level unless one of the following occurs:

   (c) new family participants over the age of 12 are added.

   Note: In the event of either subdivision (a) or (b) of this section, the inmate's application must be reviewed by the deputy commissioner for program services or his/her designee. In the event of subdivision (c), the inmate's application must be processed full-cycle pursuant to sections 220.4 and 220.5 of this Part, with the new visitors being subject to the requirements of a home visit and photo interview.

N.Y. Comp. Codes R. & Regs. tit. 7, § 220.6

refused to participate in ART and ASAT.  Am. Compl. at 9, 14, 27; Dkt. No. 9-2 at 24-25.

Morris also noted that, despite Plaintiff's previous participation in the program, "[t]he heinous

nature and circumstances of your conviction deem you to be an unsuitable candidate for the

FRP."[5]  Dkt. No. 9-2 at 24-25.  Morris also referred to Plaintiff's refusal to take responsibilities

for his actions.  *Id*.

On January 14, 2014, Plaintiff filed an Article 78 petition seeking review of the Morris'

November 2013 decision.  Dkt. No. 9-2 at 51.  In a decision filed on July 9, 2014, the Court

denied the petition noting, "[a]s the petitioner acknowledges in his petition, his 2013 FRP

application differed from his earlier application in that in 2013 he requested to include two

additional family members. This change required that the application be subjected to a

'full-cycle' discretionary review (7 NYCRR §§ 220.4, 220.6). In completing that discretionary

review, the respondent was not bound by the prior determination[.]" *Id*.; *Garcia v. Annucci*, 54

50 N.Y.S.3d 25 (N.Y. Sup. Ct. 2014), *aff'd*, 145 A.D.3d 1464 (N.Y. App. Div. 2016).

On August 26, 2014, Morris forwarded a letter to Plaintiff acknowledging his successful

completion of ART on July 13, 2014.  Dkt. No. 9-2 at 49.  Morris continued to rely upon "[t]he

total disregard of human life evidenced through the circumstances of your instant offense"

and deemed Plaintiff an "unsuitable candidate for the FRP."  *Id*.  Morris noted that, "[e]ach

decision is discretionary and this decision is in fully conformity with all applicable legal

considerations as noted in the case *Matter of Doe v. Coughlin*, 71 NY2d 48[.]" *Id*.

---

[5]    Morris' correspondence included a detailed description of Plaintiff's crimes.  Dkt. No. 9-2 at 24.
Morris noted that Plaintiff held a family hostage for hours, shot the husband and wife and "terrorized their 14 year
old daughter and 13 year old wheelchair bound son."  *Id*.   In another incident, Plaintiff "dragged" a co-worker
across a parking lot and punched and kicked her.  *Id*.  When a couple approached to help, the Plaintiff shot them
both, killing the male and severely injuring the female.  *Id*.  Plaintiff also shot and killed the co-worker.  Dkt. No.
9-2 at 24.

On May 12, 2015, Morris forwarded correspondence to Plaintiff in response to his letter of April 17, 2015.  Dkt. No. 9-2 at 51.  Morris referred to the Order dismissing Plaintiff's Article 78 petition.  *Id.*

In 2017, Morris was reassigned and Smith-Roberts replaced her as Director of MFVS.  Am. Compl. at 9.  Plaintiff wrote to Smith-Roberts and claimed that Morris' allegations were "fraudulent."  *Id.*  Smith-Roberts responded and directed Plaintiff to resubmit his FRP application.  *Id.*; Dkt. No. 9-2 at 46.  On August 4, 2017, Plaintiff resubmitted his application.  Am. Compl. at 9.  On February 23, 2018, the application was denied by the Facility FRP Coordinator due to the nature of the instant offenses with reference to Morris' decision.  *Id.*; Dkt. No. 9-2 at 47.  Plaintiff was advised that he could reapply in two years.  Am. Compl. at 10; Dkt. No. 9-2 at 47.  Plaintiff appealed the denial to Smith-Roberts.  *Id.*

On June 26, 2018, Smith-Roberts denied the application.  Am. Compl. at 10; Dkt. No. 9-2 at 36-37.  Smith-Roberts relied upon the facts outlined in Morris' correspondence and safety concerns.  Am. Compl. at 17; Dkt. No. 9-2 at 36-37.

Construing the Amended Complaint liberally[6], Plaintiff asserts the following: (1) Fourteenth Amendment due process claims; and (2) state law claims.  *See* Am. Compl., *generally*.  Plaintiff seeks declaratory judgment and monetary damages.  *See id.* at 31-35.

## IV.    ANALYSIS

---

[6]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

**A.    Eleventh Amendment**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).  Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against defendants in their official capacities (*see* Compl. at 4-5) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore

barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529

(2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity,

such a suit is deemed to be a suit against the state, and the official is entitled to invoke the

Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439,

1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under

Section 1983] for money damages against state officials in their official capacities.").

**B.    Fourteenth Amendment Due Process**

In the August Order, the Court discussed the Due Process clause and claims asserted

based upon the FRP:

> To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process, a plaintiff must show that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S.Ct. 246 (1998). Courts in this Circuit have held that inmates do not have a cognizable liberty interest in participation in the FRP. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136–38 (2d Cir.1994)); *see also Orraca v. McCreery*, No. 9:04-CV-1183 (DNH/DEP), 2008 WL 4279509, at *11 (N.D.N.Y. Sept. 15, 2008) (holding that the plaintiff could not claim deprivation of procedural due process stemming from a denial of his ability to participate in the FRP); *see also Doe v. Coughlin*, 71 N.Y.2d 48, 56 (1987) (holding that the creation of the FRP did not create a liberty interest "because, given the program's discretionary nature, inmates do not have a legitimate expectation that they will participate in it.").

> As a result, Plaintiff's exclusion from the FRP does not give rise to a claim for the violation of his rights protected under the Due Process Clause. *See Dorsey v. Fischer*, No. 9:09-CV-1011 (GLS/DEP), 2010 WL 2008966, at *9 (N.D.N.Y. May 19, 2010) (plaintiff's claim that he was improperly denied entry into the FRP not cognizable under Section 1983); *see also Moore v.*

8

> *N.Y. State Dep't of Corr. Servs.*, 26 F. App'x 32, 33 (2d Cir.
> 2001) (summary order) (dismissing claim that DOCS' refusal to
> allow plaintiff to participate in the FRP, notwithstanding his
> previous participation in the program for two years, violated his
> constitutional rights).

Dkt. No. 4 at 6-7.

In the Amended Complaint, Plaintiff attempts to distinguish the facts of his case from the holdings in the cases cited in the August Order arguing that he possessed a "state law created liberty interest" in continuing to participate in the FRP and that defendants violated his due process rights when they revoked his right to participate. Am. Compl. at 10-11. Plaintiff alleges that Morris and Smith-Roberts were charged with applying "discretionary review" only to the portion of his application that sought to add members to the program. *Id*. at 17. Plaintiff claims that Morris and Smith-Roberts improperly applied the wrong standard of review and failed to act upon the application to add family members and, instead, revoked his FRP privilege entirely. *Id*. at 17, 20. This argument lacks merit.

As discussed *supra*, Plaintiff's application to add family members over the ages of 12 subjected his application to a "full cycle" review. *See* 7 NYCRR §§ 220.4, 220.5, 220.6. Plaintiff's claim that the reviews of his application should have been limited to evaluating the new family members, is not supported by authority. *See Garcia v. Morris*, 140 A.D.3d 1441, 1441–42 (N.Y. App. Div.), *leave to appeal denied*, 28 N.Y.3d 905 (2016) (holding that DOCCS properly considered the " 'entire case record,' including the violent nature of [the] crimes[,]" prior convictions, "appeal statements placing blame on the victim[.]"). Additionally, Plaintiff's argument is nothing more than an attempt to relitigate an argument that was previously rejected. In the Order dismissing the Article 78 petition, the Court held, "[i]n completing that discretionary review, the respondent was not bound by the prior

9

determination[.]  *Garcia*, 50 N.Y.S.3d at 25.

The allegations in the Amended Complaint do not cure the deficiencies in the Fourteenth Amendment claim.  For the reasons set forth herein and in the August Order, Plaintiff's due process claims are dismissed.

**C.      State Law Claims**

Plaintiff alleges that Morris and Smith-Roberts "created fraud" and intentionally subjected him to emotional distress.  Am. Compl. at 21.  Because the Court has dismissed Plaintiff's federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

**V.      CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the Amended Complaint (Dkt. No. 9) is accepted for filing and deemed the operative pleading; and it is further

**ORDERED** that Plaintiff's claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  The Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

Dated: December 17, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge